**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LAVAR T. RODGERS, | Case No. 19–cv–16612–ESK |
| Petitioner, | |
| v. | OPINION |
| BRUCE DAVIS, et al., | |
| Respondents. | |

**KIEL, U.S.D.J.**

**THIS MATTER** comes before the Court on petitioner Lavar T. Rodgers's second amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Second Amended Petition).  (ECF No. 25).  Respondents Bruce Davis and Attorney General of New Jersey oppose the Second Amended Petition. (ECF No. 29.)  For the following reasons, the Second Amended Petition will be dismissed in part and denied in part.  No certificate of appealability shall issue.

## I.  FACTS AND PROCEDURAL HISTORY

I adopt the facts as set forth in the opinion of the New Jersey Superior Court Appellate Division (Appellate Division) denying petitioner's direct appeal.

> At the trial, the State presented evidence which established that on the afternoon of January 26, 2011, defendant's girlfriend, R.T., was in a residence in Salem, with her friend and R.T.'s three children. Defendant was in the kitchen with his friends.  Around 1:00 p.m., defendant walked out of the kitchen.   According to R.T., he smelled as if he had been smoking marijuana.
>
> Defendant told his friends and R.T.'s friend to leave and they complied.  Defendant held R.T. tightly by the

wrist. He said he had been "set up" and if "they" returned he would shoot them. R.T. broke free and, thereafter, defendant threated to shoot her and one of the children. Defendant held a gun to R.T.'s neck and pointed it at the child.

Defendant's friends eventually returned and tried to enter the home, but defendant said he would shoot them if they entered. R.T. laid down on the floor. Defendant sat on the floor and held a gun to her neck. R.T. used her cellphone to access Facebook. She posted a message stating that defendant had a gun, and he was holding her and the children. R.T. asked that someone call the police and included her address.

Sometime after 3:00 p.m., Officer William Robinson of the Salem City Police Department (SPD) called the Salem County Prosecutor's Office (SCPO), requesting backup and permission to enter a residence in Salem. Investigator Steven Dick of the SCPO and Lieutenant Robert Eller of the SPD responded to the residence. Other officers had already arrived on the scene. Robinson heard screaming inside the home.

The Chief of the SCPD arrived and a perimeter of police was established around the front, sides and rear of the building in which the residence was located. Dick, Eller and Officer Walter Christy approached the front of the home and decided to enter. Eller banged on the front door, announced that it was the police and said someone should come to the door or "we're coming in." The officers heard a woman scream, and a man said "Don't come in. Don't come in."

Christy held the storm door back, while Eller kicked open the main door. Robinson entered the house with his police dog named Jordan. He observed a young child, a short distance away. He heard three distinct shots, but could not tell where they were coming from. He saw defendant laying on top of a woman. Robinson fired a shot from his .40 caliber semi-automatic pistol and retreated with the dog, yelling for defendant to drop

2

the gun and come out.   At some point, defendant said he had been shot in the foot.

Dick testified that shots started coming out of the house as soon as Eller kicked in the door.   He recalled "return fire," which he believed came from Robinson.   Dick said that shots had been fired at him and other officers.   He looked into the house and saw a firearm pointed in his direction.   He stepped back and fired a shot into the room, which hit the storm door and shattered.

Dick retreated to a police vehicle about twenty to thirty feet from the entrance to the house.   He observed a black male step to the front door.   He saw the face for a brief time, and testified at trial that it was defendant's face.   The house was surrounded with police, and officers were "pretty much everywhere."

Dick had been grazed by a bullet.   He sustained a wound that moved up his shoulder at an angle.   The dog Jordan also had been shot, and was taken to a veterinary hospital in Pennsylvania.   The dog's lungs had been punctured by a bullet.   The bullet was later removed and the dog recovered.

Defendant cursed the police and refused to come out of the residence.   About two hours after the shootings, a State Police Technical Emergency Admission Specialists (TEAMS) unit arrived to relieve the officers on the scene.  By 5:30 p.m., R.T. and the children had left the apartment from the rear of the adjoining residence.   A hostage negotiator attempted to get the suspect to leave, but was not able to do so.   Several hours later, canisters of tear gas were fired into the home.   No one exited.

At about midnight, a man who identified himself as defendant called 911, and the call was forwarded to the Police Chief at the scene.   Defendant spoke with the Chief, and asked why the police were in front of his home.   Police dispatch traced the call to the building where defendant resided.

3

> Around 2:00 a.m., the TEAMS unit entered the residence with another dog, gas masks, flashlights and ballistic shields.   They found a .38 caliber firearm in the kitchen. They found no sign of the suspect, but in the basement observed an opening in the common wall with the adjoining residence. The officers entered the neighboring residence through the opening and found defendant hiding there, in the kitchen cabinet, under a sink, unarmed.   He was taken into custody.   They found a .45 caliber firearm on a closet shelf in that home.

*State v. Rodgers*, No. A–1696–12T4, 2014 WL 5618072, at *1–3 (N.J. Super. Ct. App. Div. Nov. 5, 2014) (*Rodgers I*).   Petitioner was convicted of four counts of first-degree kidnapping, N.J.S.A. 2C:13–1(b)(2); four counts of third-degree criminal restraint, N.J.S.A. 2C:13–2(a); four counts of first-degree attempted murder, N.J.S.A. 2C:5–1, 2C:11–3; four counts of second-degree aggravated assault, N.J.S.A. 2C:12–1(b)(1); one count of third-degree aggravated assault against a law enforcement officer, N.J.S.A. 2C:12–1(b)(5)(a); three counts of fourth-degree aggravated assault against a law enforcement officer, N.J.S.A. 2C:12–1(b)(5)(a); two counts of fourth-degree aggravated assault with a firearm, N.J.S.A. 2C:12–1(b)(4); one count of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39–5(b); one count of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39–4(a); one count of fourth-degree purposeful injury to animals used for law enforcement, N.J.S.A. 2C:29–3.1; and one count of second-degree certain persons not to have weapons, N.J.S.A. 2C:39–7(b).   (ECF No. 29 pp. 2, 3.)   He received an aggregate sentence of 62 years with an 85 percent period of parole ineligibility.   (ECF No. 29–5 p. 1.)

Petitioner filed a direct appeal in the Appellate Division.   *Rodgers I*, 2014 WL 5618072, at *1.   The Appellate Division affirmed his convictions and sentence.   *Id.* at *8.   It declined to address petitioner's ineffective assistance of trial counsel claims because those claims were more appropriately raised in a petition for post-conviction relief (PCR).   *Id.* at *7.   The New Jersey

Supreme Court denied certification on April 30, 2015.  *State v. Rodgers*, 221 N.J. 287 (2015) (Table).

Petitioner filed a *pro se* PCR petition on July 16, 2015.  (ECF No. 29–17.) The PCR court conducted oral argument on January 23, 2017.  (ECF No. 29–48.)  On March 9, 2017, the PCR court denied the petition without an evidentiary hearing.  (ECF No. 29–17 p. 27.)  The Appellate Division affirmed the PCR court on December 17, 2018.  *State v. Rodgers*, No. A–0710–17T4, 2018 WL 6596110 (N.J. Super. Ct. App. Div. Dec. 17, 2018) (*Rodgers II*).  The New Jersey Supreme Court denied certification on June 3, 2019.  *State v. Rodgers*, 238 N.J. 364 (2019) (Table).

The original petition was filed on August 12, 2019. (ECF No. 1). District Judge Noel L. Hillman issued an order to answer on November 27, 2019. (ECF No. 5.)  On January 14, 2020, Judge Hillman granted respondents' request for an extension of time to answer; the new date for the answer was March 11, 2020.  (ECF No. 7.)  On March 2, 2020, petitioner filed a motion to correct his habeas petition (Amended Petition).  (ECF No. 8.)  He stated that he was only correcting some typographical errors in the original and was not adding new claims.  (*Id.* p. 3.)  Judge Hillman granted the request over respondents' objection and extended the date to answer the Amended Petition until March 25, 2020.  (ECF No. 11.)  Respondents submitted their answer on March 18, 2020.  (ECF No. 12.)

Petitioner filed a motion for a stay and abeyance on May 8, 2020.  (ECF No. 14.)  Petitioner stated that he wanted to file a second PCR petition in the state courts "to exhaust the kidnapping offense, and ineffective assistance of counsel, from trial appellate and first (1st) PCR counsel for not addressing or investigating this incident, for [that] there was evidence to dispute otherwise." (*Id.* p. 3.)  Respondents objected to the motion to stay, arguing that the claims petitioner wanted to raise in the state courts did not relate back to the already-

filed claims and would therefore be untimely. (ECF No. 15.) Petitioner responded that he did raise the unexhausted claims in his Amended Petition, respondents just failed to answer them. (ECF No. 19.) Judge Hillman concluded that because "[i]neffective assistance of counsel may excuse a procedural default in certain circumstances … it is in the interests of justice to allow the state courts to have the first opportunity to consider [p]etitioner's claims." (ECF No. 20 p. 4 (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)).) Judge Hillman specified that "nothing in this Opinion or Order requires the state courts to make a decision on the merits if they decide [p]etitioner has not met the state procedural rules for filing a second PCR petition." (*Id.* p. 4 n. 1.) Judge Hillman also reserved deciding whether petitioner included the claims in his Amended Petition until exhaustion was complete. (*Id.* p. 5.) Petitioner was instructed to file another amended petition "gather[ing] in one place every claim [p]etitioner is raising under § 2254" when he was finished in the state courts. (*Id.*) The proceedings were administratively terminated on June 29, 2020. (ECF No. 21.)

On August 6, 2020, petitioner filed a second petition for PCR, which was dismissed on September 5, 2020 as untimely pursuant to New Jersey Court Rule 3:22–4(b). (ECF No. 29–27.) Petitioner appealed, and the Appellate Division affirmed on July 12, 2022. *State v. Rodgers*, No. A–2349–20, 2022 WL 2674947, at *3 (N.J. Super. Ct. App. Div. July 12, 2022) (*Rodgers III*). The New Jersey Supreme Court denied certification on March 10, 2023. *State v. Rodgers*, 253 N.J. 265 (2023) (Table).

Petitioner submitted a letter on April 5, 2023 indicating that he had received a final decision from the New Jersey Supreme Court and wanted to reopen his § 2254 proceedings. (ECF No. 23.) Judge Hillman reopened the proceedings but noted that petitioner had not complied with the order to submit his second amended petition. (ECF No. 24 pp. 2, 3.) He directed the Clerk to

6

mail petitioner a blank § 2254 form.   (*Id.* pp. 3, 4.)   Petitioner submitted the Second Amended Petition on May 30, 2023, (ECF No. 25), and respondents submitted a supplemental answer on July 27, 2023, (ECF No. 29.)   This matter was reassigned to me on March 25, 2024.   (ECF No. 30.)

## II.  LEGAL STANDARD

"The federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases."   *Shoop v. Hill*, 586 U.S. 45, 48 (2019).   A federal court may entertain a petition for writ of habeas corpus on behalf of a person in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent."   *Williams v. Taylor*,

7

529 U.S. 362, 405–06 (2000). "[A] state-court decision is an unreasonable application of [the Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014). "This means that a state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Shoop*, 586 U.S. at 48 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). I must presume that the state court's factual findings are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See Brown v. Davenport*, 596 U.S. 118, 134 (2022) ("[E]ven a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief.").

### III. DISCUSSION

#### A.      Ground One—Identification Evidence and Instructions

In his first claim for relief, petitioner argues that the trial court erred by admitting improper identification testimony after failing to conduct a *Wade*[1] hearing. (ECF No. 25 p. 7.) This claim was rejected on its merits on direct appeal. *Rodgers I*, 2014 WL 5618072 at *4–5.

---

[1] *United States v. Wade*, 388 U.S. 218 (1967).

"The purpose of a *Wade* hearing is to determine whether identification testimony should be suppressed because the manner in which the identification of the suspect was obtained was unduly suggestive."  *Herrill v. Ricci*, No. 10–cv–03575, 2016 WL 1183176, at \*18 (D.N.J. Mar. 28, 2016) (citing *United States v. Wade*, 388 U.S. 218, 242 (1967)).   The Appellate Division concluded that the trial court had not been required to conduct a *Wade* hearing because "[t]he identifications were not the result of any impermissibly suggestive procedure." *Rodgers I*, 2014 WL 5618072 at \*4.

The Appellate Division correctly concluded that petitioner was not entitled to a *Wade* hearing.   A *Wade* "hearing is made outside the presence of a jury, and concerns not the in-court identification, but only the pre-trial identification."   *United States v. Stevens*, 935 F.2d 1380, 1386 n. 3 (3d Cir. 1991) (citation omitted).   Petitioner is challenging the in-court identifications by Robinson and Dick; therefore, *Wade* does not apply to his case.   The Appellate Division further concluded that Robinson and Dick "made their identifications based on their personal observations of defendant during the encounter."   *Rodgers I*, 2014 WL 5618072 at \*5.   This also complies with federal law.   "[T]he Supreme Court has ruled that, where identifications were entirely based upon observations at the time of the incident and not at all induced by the conduct of the pretrial identification procedures, the identification does not violate due process."   *Herrill*, 2016 WL 1183176, at \*18 (cleaned up); *see also Perry v. New Hampshire*, 565 U.S. 228, 248 (2012) ("[T]he Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement.")

9

Petitioner also argues that the trial court improperly instructed the jury on this issue.[2]   (ECF No. 25 p. 7.)   He challenges the following portion of the instructions:

> The State has presented the testimony of [Sergeant] Robinson. You will recall that this witness identified [defendant] in court as the person who committed the offenses charged in the indictment.
>
> The State also presented testimony that on a prior occasion before this trial [Sergeant] Robinson identified [defendant] as the person who committed the offenses.   According to that witness, his identification of [defendant] was based upon the observations and the perceptions that he made of the perpetrator at the time the offenses were being committed.

*Rodgers I*, 2014 WL 5618072 at *5 (alterations in original).   Petitioner "argues that the court erroneously stated that Robinson made an out-of-court identification of him.   He says that, even if this instruction was correct, a similar instruction should have been provided regarding Dick's identification." (*Id.*)   Here, the Appellate Division determined that the jury was properly instructed on identification, finding Petitioner's contentions to be "unpersua[sive]."   *Id.* at *2.

It is a "well established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the

---

[2] Respondents argue that this argument is time barred because it was not included in the original Petition and the Amended Petition was submitted after the one-year statute of limitations expired.   (ECF No. 29 pp. 22, 23.)   The New Jersey Supreme Court denied certification of petitioner's direct appeal on April 30, 2015. *State v. Rodgers*, 221 N.J. 287 (2015) (Table).   A state court conviction is not final until either the Supreme Court of the United States denies a writ of certiorari or the time to file a petition for a writ of certiorari has passed.   28 U.S.C. § 2244(d)(1)(A).   For petitioner, this date was July 29, 2015—90 days after the New Jersey Supreme Court denied certification.   The time to file a § 2254 petition was statutorily tolled while the PCR petition was pending.   28 U.S.C. § 2244(d)(2).   Accordingly, petitioner had one year from June 3, 2019 to file his habeas corpus petition.   The Amended Petition was filed within this one-year period on March 2, 2020.   (ECF No. 8.)

overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973).   The Appellate Division concluded that "the charge was appropriate because Robinson's and Dick's observations were different.   Robinson testified that he observed defendant committing the offenses, whereas Dick merely stated that defendant was someone he saw in the house, after the shootings."   *Rodgers I*, 2014 WL 5618072 at *5.   "Thus, the court's statement that Robinson identified defendant 'as the person who committed the offenses' was accurate, and a similar statement as to Dick was not warranted."   *Id.*

This conclusion is reasonable based on the facts at trial.   The trial court instructed the jury:

> The State has presented the testimony of Sgt. Robison.  You will recall that this witness identified Mr. Rodgers in court as the person who committed the offenses charged in the indictment.
>
> The State also presented testimony that on a prior occasion before this trial Sgt. Robinson identified Mr. Rodgers as the person who committed the offenses. According to that witness, his identification of Mr. Rodgers was based upon the observations and the perceptions that he made of the perpetrator at the time the offenses were being committed.

(ECF No. 29–44 pp.128, 129.)   The trial court further reminded the jury that "[t]he ultimate issues of the trustworthiness of both the in- and out-of-court identifications are for you to decide."   (*Id.* p.129.)

The Appellate Division reasonably concluded that this instruction was appropriate given the facts of the case.   The jury received clear instructions that the alleged "out of court" identification was based on Rodgers's interactions with petitioner at the time of the offense as opposed to a separate identification procedure.   Therefore, I conclude that the Appellate Division's resolution of the claim was not contrary to or an unreasonable application of federal law. Habeas relief is denied on this ground.

11

### B.    Ground Two–Prosecutorial Misconduct

In Ground Two, petitioner argues that the prosecutor engaged in misconduct when he misstated evidence, denigrated the defendant, and improperly appealed to the jury's sympathies during opening and closing arguments.  (ECF No. 25 p. 8.)  The duty of a prosecutor in a criminal proceeding is to see that justice is done rather than to secure convictions, and prosecutors must therefore "refrain from [the use of] improper methods calculated to produce a wrongful conviction ... ."  *Berger v. United States*, 295 U.S. 78, 88 (1935); *see also United States v. Bailey*, 840 F.3d 99, 124 (3d Cir. 2016).  A criminal conviction, however, "'is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.'"  *United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)).  Prosecutorial misconduct will therefore only warrant habeas relief where it "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted).

Petitioner argues the prosecutor's opening statement that Robinson would testify that petitioner's face is "a face he'll never forget" was inaccurate because Robinson did not testify that he would never forget petitioner's face.  (ECF No. 25 p. 8; *see also* ECF No. 29–40 p. 14.)  The Appellate Division rejected this argument.

> As we have noted, Robinson identified defendant as the person he saw committing the charged offenses.  Robinson said he was able to see the shooter's face and defendant as the shooter.  The assistant prosecutor's statement that Robinson would not forget the face was fair comment on the testimony.

12

*Rodgers I*, 2014 WL 5618072 at *6.   This is a reasonable conclusion based on the facts produced at trial.   "If an opening statement is an objective summary of evidence the government reasonably expects to produce, a subsequent failure in proof will not necessarily result in a mistrial."   *United States v. Retos*, 25 F.3d 1220, 1226 (3d Cir. 1994) (cleaned up).   Here, Robinson testified that he "looked [petitioner] dead in his face" and that petitioner "was looking right at me."   (ECF No. 29–41 p. 75.)   The fact that Robinson did not specifically say he would never forget petitioner's face does not make the prosecutor's opening statement violative of due process.

Petitioner also objected "to the assistant prosecutor's reference to him as a 'dangerous, violent, murderous person.'"   *Rodgers I*, 2014 WL 5618072 at *6. The Appellate Division concluded that this language was not improper as petitioner "had been charged with kidnapping and attempted murder, and the State presented sufficient evidence to support those charges."   *Id.*   This is a reasonable reading of the record.   This statement was made in the context of explaining why R.T. acted as she did.   (ECF No. 29–40 p. 16.)   It was a brief comment, took place several days before deliberations began, and trial counsel did not object at the time.   *See Simmons v. D'Ilio*, No. 14–cv–02032, 2017 WL 1535097, at *11 (D.N.J. Apr. 27, 2017) ("Generally, if no objection was made to the improper remarks, the remarks will not be deemed prejudicial.   The failure to object suggests that defense counsel did not believe the remarks were prejudicial at the time they were made and also deprives the court of an opportunity to take curative action.")   The same may be said of petitioner's argument regarding a comment during closing arguments that noted one of the responding officers was about to retire.   *Rodgers I*, 2014 WL 5618072 at *7 ("[T]he prosecutor's comment regarding the officer who responded to the scene was not an improper appeal to the jury's sympathies.")

13

Moreover, the trial court instructed the jury that counsel's arguments were not evidence and that the verdict must rest solely on the record:

> At the conclusion of the testimony, the attorneys will speak to you once again in summation or closing argument.  At that time, they are going to present to you their final arguments, based upon their respective recollections of the evidence.
>
> Again, this is not evidence but their recollection of the evidence.   It is your recollection of the evidence presented during the course of the trial that is controlling.

(ECF No. 29–39 p. 24.)   The trial court repeated this instruction after closing arguments: "Any statement made in the openings that deal with anything aside from the outline of the facts that the State or defense intends to prove at trial should be disregarded.   Likewise, any statement made in openings that may garner sympathy or emotion should be disregarded."   (ECF No. 29–44 p. 120.) This curative instruction further mitigates any potential prejudice.

When viewed in the context of the entire proceedings and in consideration of all the evidence at trial, any objectionable statements by the prosecutor did not so infect the trial such that habeas relief would be warranted.   Petitioner is not entitled to habeas relief on this claim.

### C.    <u>Ground Three–Sentencing</u>

In Ground Three, petitioner asserts that the trial court's sentence violated was illegal because the judge did not follow proper procedures for imposing consecutive prison terms.   (ECF No. 25 p. 9.)

"[A] federal court's ability to review state sentences is limited to challenges based on 'proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies.'"   *Rollins v. Slaughter*, No. 19–cv–13390, 2022 WL 2358387, at *17 (D.N.J. June 30, 2022) (quoting *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987)).   "Thus, federal courts may not review a challenge to a state court's discretion at sentencing unless it

violates a separate federal constitutional limitation." *Id.* (citing *Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984)). Here, petitioner does not cite any federal law, stating only that the trial court "failed to follow the criteria mandated to impose an extended term sentence." (ECF No. 25 p. 9.)

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Additionally, petitioner was convicted of first-degree attempted murder. First-degree crimes are eligible for sentences "between 20 years and life imprisonment." N.J.S.A. 2C:43–7(a)(2). Petitioner's sentence is within that range. "Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011). I will deny this claim for relief as petitioner has not alleged any violation of federal law.

### D. Ground Four–Juror Misconduct

In Ground Four, petitioner asserts that the trial court failed to grant a mistrial due to juror misconduct. (ECF No. 25 p. 10.) The Appellate Division concluded this argument was "without sufficient merit to warrant discussion." *Rodgers I*, 2014 WL 5618072 at *8 (citing N.J. Ct. R. 2:11–3(e)(2).) "[S]tate court decisions that are devoid of reasoning, *i.e.*, a bare ruling, constitute adjudications on the merits that trigger AEDPA deference." *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 282 (3d Cir. 2016). In reviewing this claim, I must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). Here, that is the trial court's decision.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime

15

shall have been committed ...." U.S. Const. amend. VI. "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). However, "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties." *Remmer v. United States*, 347 U.S. 227, 229 (1954). "The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Id.*

A local newspaper published an article about the trial during the proceedings. (ECF No. 29–46 p. 9.) When the jury entered, the trial court asked if anyone had "read any newspaper coverage regarding to [sic] this case." (*Id.* p. 13.) Juror Three indicated that she had not read the article but had mentioned it to the other jurors. (*Id.* p. 14.) The juror was questioned at sidebar and stated that she only told the other jurors that the story "was in the newspaper on the cover." (*Id.*) The trial court asked the juror if the article would "have any ability on [her] ability to be fair and impartial?" (*Id.* p. 15.) She responded that it would not. (*Id.*) The trial court gave both parties the opportunity to be heard, which they declined. (*Id.*)

After discussing the language with the parties, the trial court issued an instruction to the jury:

> Okay, Juror Number 3 indicated to us that she had mentioned to the Panel in general that there had been an article in today's Sunbeam today, although she did not read it. Would the fact that she said that to any, to you impact your ability to be fair an[d] impartial in this case. If so would you please raise your hand. I saw no hands going up.

> I also have to instruct you now yes, there is an article in today's Sunbeam today and I need to instruct you that you shall not read that article or any other article that may appear during the time of your deliberations or listen to anyone else discuss them.   Just so you know, you're free to read it as many times as you want when you're done deliberating, okay.   But you're not allowed to read anything that's in the paper as you know during the deliberations.

(*Id.* pp.16, 17.)   The trial court gave both parties another opportunity to be heard, which they again declined.   (*Id.* p.17.)

"Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith*, 455 U.S. at 217.   Here, the trial court followed federal law by conducting an individual voir dire of Juror Three and giving trial counsel the opportunity to question her.   *See id.*; *United States v. Mack*, 816 F. App'x 691, 692 n.3 (3d Cir. 2020) ("Individual voir dire is the method of inquiry we have preferred where there is a significant possibility that a juror has been exposed to prejudicial extra-record information." (cleaned up)); *United States v. Console*, 13 F.3d 641, 667 (3d Cir. 1993).   The trial court then queried the entire jury and confirmed that they would be able to continue deliberating fairly and impartially.   "[T]he presumption of prejudice is effectively rebutted by a juror's credible profession of impartiality." *United States v. Smith*, 319 F. Supp. 2d 527, 533 (E.D. Pa. 2004).   Therefore, it was reasonable for the trial court to conclude that petitioner had not been prejudiced.   Habeas relief is denied on this claim.

### E.    Ground Five–Prosecutorial Misconduct

Petitioner raises another claim of prosecutorial misconduct in Ground Five, asserting that the prosecutor failed to return a valid indictment, threatened a witness, and made comments on petitioner's right to remain silent.

17

(ECF No. 25 p. 13.)   With the exception of his argument that the prosecutor made comments on his right to remain silent,[3] petitioner has procedurally defaulted on these claims.

The procedural default doctrine provides that "federal courts generally decline to hear any federal claim that was not presented to the state courts 'consistent with [the State's] own procedural rules.'"  *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (alteration in original) (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).   It "prohibits federal courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment."  *Fahy v. Horn*, 516 F.3d 169, 187 (3d Cir. 2008). "[T]he state procedural law invoked by the state court must be firmly established and regularly followed."  *Massenburg v. Davis*, 704 F. Supp. 3d 540, 553 (D.N.J. 2023).

Petitioner raised his challenges to the indictment and alleged threats to R.T. for the first time before the Appellate Division in his appeal of the denial of his second PCR petition.[4]  *See Rodgers III*, 2022 WL 2674947, at *2.   The Appellate Division affirmed the PCR court's finding that the second PCR petition was procedurally barred as it was untimely.  *See id.* at *1 (citing N.J Ct. R. 3:22–12(a)(2).)   "New Jersey courts have generally applied the time bar set forth in [N.J. Ct. R.] 3:22–12 so that this rule can fairly be said to have been firmly established and regularly followed."  *Johnson v. Pinchak*, 392 F.3d 551,

---

[3] The Appellate Division concluded this argument was "without sufficient merit to warrant discussion."  *Rodgers I*, 2014 WL 5618072 at *8 (citing N.J. Ct. R. 2:11–3(e)(2).)

[4] In his first PCR petition, petitioner raised an ineffective assistance of counsel claim alleging trial counsel failed to properly cross-examine R.T. but did not allege prosecutorial misconduct.  *Rodgers II*, 2018 WL 6596110, at *3–4.

561 (3d Cir. 2004). Therefore, petitioner's challenges to the indictment and alleged threats to R.T. are procedurally defaulted.

"[O]nly rarely may a federal habeas court hear a claim or consider evidence that a prisoner did not previously present to the state courts in compliance with state procedural rules." *Shinn v. Ramirez*, 596 U.S. 366, 375–76 (2022). "'Out of respect for finality, comity, and the orderly administration of justice,' federal courts may excuse procedural default only if a prisoner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.'" *Id.* at 379 (quoting *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

To establish cause, Petitioner "must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Petitioner has presented no facts that would support a finding of cause for this default. The state courts concluded that petitioner had defaulted on these arguments because he did not file his second PCR petition within a year of the denial of his first PCR petition and "the [New Jersey court rules] 'absolutely prohibited' an extension of that time limit." *Rodgers III*, 2022 WL 2674947, at *1. It was petitioner, not counsel, who failed to file a timely second PCR petition. Therefore, petitioner has not established cause for his procedural default, and I will dismiss these claims accordingly.

### 1. Comment on Petitioner's Silence

Petitioner asserts that the prosecutor impermissibly commented on his silence during argument. (ECF No. 25 p.13.) The Fifth Amendment "forbids ... comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. Cal.*, 380 U.S. 609, 615 (1968). "Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, *Griffin* holds that the privilege

19

against compulsory self-incrimination is violated. But where … the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege." *United States v. Robinson*, 485 U.S. 25, 32 (1988).

Petitioner objects to the prosecutor stating during his closing argument that petitioner "by the very nature of what he did, you know he knew he did it." (ECF No. 25 p.13.)   However, it is evident that this is not a comment on petitioner's silence when viewed in context.   The prosecutor made this comment to refute any assertion that petitioner did not act with the appropriate *mens rea* due to his drug use:

> But guess what?   That's not a free pass on your behavior.   And the Judge will tell you what the standard for intoxication is.   You don't get to become voluntarily intoxicated and do what you want. There's a legal standard.   It has to negate a knowing and intentional element of the offense, which it didn't do here because by the very nature of what he did, you know he knew he did it.

(ECF No. 29–44 p.79.)   This is not a comment on petitioner's right to remain silent.   The Appellate Division's decision did not violate federal law and was reasonable based on the facts.   Petitioner is not entitled to habeas relief on this claim.

### F.   Ground Six–Verdict Sheet and Jury Instructions

Petitioner's next argument is that the instruction and verdict sheet for the attempted murder charge "reflects the impermissible mental state of knowingly … ."   (ECF No. 25 p.13.)[5]   According to petitioner, "it is well established law that when instructing the jury on attempted murder a purposely mental state

---

[5] Respondents argue that Ground Six was not included in the original petition and is therefore untimely.   (ECF No. 29 p.40.)   This claim was included in the original petition as Claim IX.   (ECF No. 1 p.4.)

is the only mental state should surface [sic].   Moreover, purposely requires a mu[c]h high state of mind."   (ECF No. 29–8 p. 27.)   The Appellate Division concluded this argument was "without sufficient merit to warrant discussion." *Rodgers I*, 2014 WL 5618072 at \*8 (citing N.J. Ct. R. 2:11–3(e)(2).)

"The United States Supreme Court and the Third Circuit have made clear that it is not the role of the federal courts to review state court jury instruction rulings that are based on state law."   *Howard v. D'Ilio*, No. 14–cv–04758, 2018 WL 1014168, at \*5 (D.N.J. Feb. 22, 2018).   My "habeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights."   *Echols v. Ricci*, 492 F. App'x 301, 312 (3d Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 72–73 (1991)).   "A defendant's due process rights are violated, in turn, only where the instruction 'operated to lift the burden of proof on an essential element of an offense as defined by state law.'"   *Id.* quoting (*Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997)).   "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."   *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Moreover, failure to submit an element of a crime to a jury is subject to a constitutional harmless error analysis.   *See Neder v. United States*, 527 U.S. 1 (1999).   "[A] state prisoner seeking to challenge his conviction in collateral federal proceedings must show that the error had a 'substantial and injurious effect or influence' on the outcome of his trial."   *Brown v. Davenport*, 596 U.S. 118, 126 (2022) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

The trial court gave the following instructions about the attempted murder charges:

> [T]he indictment alleges that … Mr. Rodgers did knowingly and purposely attempt to cause the death of [Stephen Dick, Robert Eller, William Robinson, and Walter Christy].

21

… In order for you to find Mr. Rodgers guilty of attempted murder, the State must prove beyond a reasonable doubt that it was Mr. Rodgers's purpose to cause the death of the victim.

More specifically, the law provides that a person is guilty of an attempt to commit the crime of murder if the person purposely did or omitted to do anything which under the circumstances as a reasonable person would believe them to be is an act or omission constituting a substantial step in a course of conduct planned to culminate in his causing the death of the victim.

Thus, in order to find Mr. Rodgers guilty of the crime of attempted murder, the State must prove the following elements beyond a reasonable doubt: 1) that Mr. Rodgers's purpose was to cause the death of Stephen Dick, Robert Eller, William Robinson, and/or Walter Christy. Secondly, that Mr. Rodgers purposely did or omitted to do anything which under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his causing the death of the victim.

First, the State must prove beyond a reasonable doubt that Mr. Rodgers acted purposely.  … [P]urposely means it was the person's conscious object to cause the death of the victim. Whether Mr. Rodgers['s] purpose was to cause the death of the victim is a question of fact for you to decide. …

….

Causing the death of the victim must be within the design and contemplation of Mr. Rodgers.

(ECF No. 29–44 pp. 145, 146, 147.) The trial court had previously defined "knowingly":

A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence.

A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct would cause

22

such a result.  Knowingly, with knowledge or equivalent terms have the same meaning.

(*Id.* p.141.)

The jury was instructed that it could only convict petitioner if it found beyond a reasonable doubt that he "knowingly and purposely" attempted to cause the death of the officers.  (*Id.* p.145.)  The verdict sheet also contained this language.  (ECF No. 29–6 p.78.)  "Knowingly" and "purposely" were defined for the jury, and petitioner has not shown that the instructions lifted the burden of proof from the State.  *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997).  Accordingly, the Appellate Division's decision did not violate federal law and was reasonable based on the facts.  Petitioner is not entitled to habeas relief on this claim.

### G.    Ground Seven–Failure to Allocute

Petitioner argues in Ground Seven that his due process rights were violated at sentencing when he did not give "a verbatim allocution response on the record."  (ECF No. 25 p.13.)[6]  The Appellate Division concluded this argument was "without sufficient merit to warrant discussion."  *Rodgers I*, 2014 WL 5618072 at *8 (citing N.J. Ct. R. 2:11–3(e)(2).)

"The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus." *Hill v. United States*, 368 U.S. 424, 428 (1962) (holding violation of Federal Rule of Criminal Procedure 32(a) did not warrant relief pursuant to 28 U.S.C. § 2255).  "It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary

---

[6] Respondents argue that Ground Seven was not included in the original petition and is therefore untimely.  (ECF No. 29 p. 43.)  This claim was included in the original petition as Claim XI.  (ECF No. 1 p. 5.)

demands of fair procedure.   It does not present 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'"   *Id.* (quoting *Bowen v. Johnston*, 306 U.S. 19, 27 (1939)).

Moreover, petitioner was given the chance to address the trial court before sentencing.

> THE COURT: Okay.   Mr. Rodgers, is there anything you want to say before I sentence you today?
>
> MR. RODGERS: (No audible response).
>
> THE COURT: No?   Okay.

(ECF No. 29–47 p.13.)   Petitioner had the chance to make an allocution prior to being sentenced, but he declined the opportunity.   Accordingly, the Appellate Division's decision did not violate federal law and was reasonable based on the facts.   Petitioner is not entitled to habeas relief on this claim.

### H.   Ground Eight–Failure to Recuse or Excuse Juror Five

Petitioner asserts in Ground Eight that the trial court should have "dismissed Juror #5 because [the juror's] husband put 'Gutters' on [the judge's] house … . ."   (ECF No. 25 p.14.)[7]   The Appellate Division concluded this argument was "without sufficient merit to warrant discussion."   *Rodgers I*, 2014 WL 5618072 at *8 (citing N.J. Ct. R. 2:11–3(e)(2).)

"Due process guarantees 'an absence of actual bias' on the part of a judge." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (quoting *In re Murchison,* 349 U.S. 133, 136 (1955)).   The question is not "whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge

---

[7] Respondents argue that Ground Eight was not included in the original petition and is therefore untimely.   (ECF No. 29 p.45.)   This claim was included in the original petition as Claim XII.   (ECF No. 1 p.5.)

in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Id.* (cleaned up). "Recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

Petitioner has not met this standard. A reasonable person would not conclude that the trial court was biased because a juror's husband performed work on the judge's home years before the trial. (*See* ECF No. 29–40 p. 5 (trial court noting that Juror Five's "husband put some gutters on my house a few years ago"").)

Petitioner also has not shown that it was error not to excuse Juror Five. "Dismissal of a juror is allowed when there is a demonstrably close relationship with the parties, counsel, victims, or witnesses and/or when answers to the voir dire questions indicate a prejudice, bias or inability to remain fair and impartial." *Hagens v. Zaken*, No. 22–cv–01517, 2024 WL 5717945, at *8 (E.D. Pa. June 28, 2024), *report and recommendation adopted*, No. 22–cv–01517, 2025 WL 1713572 (E.D. Pa. Mar. 12, 2025). Immediately after being informed of the tenuous connection, the trial court asked Juror Five if it would "have any impact on [her] ability to be fair and impartial in this case?" (ECF No. 29–40 p. 5.) The transcript states there was "no audible response," but both attorneys declined to ask anything further. (*Id.*)

"[T]he presumption of prejudice is effectively rebutted by a juror's credible profession of impartiality." *United States v. Smith*, 319 F. Supp. 2d 527, 533 (E.D. Pa. 2004). Nothing in the record indicates that Juror Five could not be fair and impartial. Additionally, she did not participate in deliberations as she was an alternate. (ECF No. 29–44 pp. 196, 197.) Accordingly, the Appellate Division's decision did not violate federal law and was reasonable based on the facts. Petitioner is not entitled to habeas relief on this claim.

25

## I.   Ground Nine–Ineffective Assistance of Counsel

Petitioner asserts in Ground Nine that trial counsel's failure to request dismissal because R.T. "indicat[ed] that she did not wish to pursue with the case against the defendant because the allegations [were] false" was ineffective assistance of counsel.   (ECF No. 25 p. 14.)

Respondents assert that this argument is time barred.   (ECF No. 29 pp. 48, 49.)   I agree.   Petitioner did not include this argument in the original Petition; he alleged that trial counsel was ineffective for failing to cross-examine R.T. about her statement that she made false allegations against petitioner (Claim XIV), but he did not assert trial counsel was ineffective for failing to request a dismissal.   (ECF No. 1 p. 5.)   Petitioner did not raise this claim in federal court until May 30, 2023.   (ECF No. 25 p. 14.)

"Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the conduct, transaction, or occurrence.'"   *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (alteration in original) (quoting Fed. R. Civ. Pro. 15(c)).   In *Mayle*, the Supreme Court rejected the argument that an amendment to a habeas petition relates back to the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence. Under that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto."   *Id.* at 656–57.   The Court held that "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."   *Id.* at 659.

A party may submit an amendment "to provide factual clarification or amplification" to a previously filed claim, but proposed amendments that "seek to add a new claim or to insert a new theory into the case" do not relate back.

26

*United States v. Thomas*, 221 F.3d 430, 431 (3d Cir. 2000).   "[] *Mayle* forecloses the relation back of a new, untimely claim when it is 'supported by facts that differ in both time and type from those the original pleading set forth.'"   *Hodge v. United States*, 554 F.3d 372, 378 (3d Cir. 2009) (quoting *Mayle*, 545 U.S. at 650).

The two arguments are different in time.   Claim XIV asserts trial counsel was ineffective during cross-examination, (ECF No. 1 p. 5), and Ground Nine asserts trial counsel was ineffective for failing to request a dismissal of the charges *before* R.T.'s testimony, (ECF No. 25 p. 14; ECF No. 29–8 p. 40.) Although they are both ineffective assistance claims, they are different in type because the underlying facts are different.   In short, ineffective assistance for failing to request a dismissal is a completely new legal theory from ineffective assistance of counsel during cross-examination.   *Compare United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999) (holding an amendment to a petition, seeking to add a claim concerning failure to file an appeal, was distinct from a claim concerning failure to pursue a downward departures), *with Saunders v. D'Illio*, No. 15–cv–02683, 2016 WL 4689038, at *3 (D.N.J. Sept. 7, 2016) (allowing amendment because petitioner originally "asserted trial counsel was ineffective for failing to call certain witnesses at trial" and the amendment "sets forth [p]etitioner's arguments as to how those witnesses would have helped him at trial.").

Therefore, Ground Nine does not relate back to the original Petition and is barred by the statute of limitations.[8]   Ground Nine is dismissed.

---

[8] I further note that petitioner did not exhaust Ground Nine because it was not raised during his PCR proceedings after being dismissed by the Appellate Division on direct appeal.   *See Rodgers I*, 2014 WL 5618072, at *7; *Rodgers II*, 2018 WL 6596110, at *3; (ECF No. 29–25 pp. 12, 13, 14.)

## J.    Ground Ten–Ineffective Assistance of Counsel

Petitioner's final claim alleges his case "contained two separate occasions of Juror's taint and because his trial counsel failed to advocate in this regard, his client[']s position, [trial counsel] rendered ineffective assistance."   (ECF No. 25 p.14.)   I interpret this as asserting that trial counsel should have requested a mistrial due to Juror Three's sighting of the newspaper article and Juror Five's "connection" with the trial court.   This argument appeared in the original Petition, (ECF No. 1 p.5), but petitioner's argument about Juror Five was not exhausted in the state courts.   *See Rodgers II*, 2018 WL 6596110, at \*4–5; (ECF No. 29–25 pp.12, 13, 14.)   I will exercise my discretion to deny it on the merits, however.   28 U.S.C. § 2254(b)(2).

For petitioner to succeed on his ineffective assistance claims, he must first "show that counsel's representation fell below an objective standard of reasonableness."   *Strickland v. Washington*, 466 U.S. 668, 688 (1984).   He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.* at 694.   *Strickland* also applies to petitioner's ineffective assistance of appellate counsel claims.   For these claims, petitioner must show "that there is a 'reasonable probability'—'a probability sufficient to undermine confidence in the outcome,' but less than a preponderance of the evidence—that his appeal would have prevailed had counsel's performance satisfied constitutional requirements."   *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 694–95).

### 1.    *Juror Three*

Petitioner exhausted his ineffective assistance argument as it concerns failing to request a mistrial after Juror Three saw the newspaper article. *Rodgers II*, 2018 WL 6596110, at *4–5.   I review this argument with the appropriate AEDPA deference.   Here, the "pivotal question" in a *Strickland* claim "is whether the state court's application of the *Strickland* standard was unreasonable.   This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."   *Harrington v. Richter*, 562 U.S. 86, 101 (2011).   "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."   *Id.* at 105. My review is thus "doubly deferential[.]"   *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

The Appellate Division relied on the PCR court's decision in rejecting petitioner's argument.

> The PCR court found that defense counsel was not ineffective for failing to seek a mistrial.   The court stated there was nothing in the record to indicate that Juror No. 3 had obtained prejudicial information about the case from the article, and no evidence showing that the juror's exposure to the headline had the capacity to influence the jury's deliberations.
>
> The court noted that defendant's attorney had conceded the headline was not inflammatory.   The court also determined that counsel's failure to seek a mistrial did not have any effect on the outcome of the trial, and defendant had not shown that the result of the proceeding would have been different, if counsel had moved for a mistrial.[9]   The record supports these findings.

---

[9] I note that the Appellate Division imprecisely paraphrased the *Stickland* standard as *Strickland* only requires that the petitioner establish a reasonable probability that the result would have been different.   However, the PCR court correctly defined the *Strickland* standard in its decision, (ECF No. 29–17 p. 34), as did the Appellate Division prior to this statement, *Rodgers II*, 2018 WL 6596110, at *3.   I do not find that the Appellate Division applied the wrong standard of review.

*Rodgers II*, 2018 WL 6596110, at \*5.

I concluded in my review of Ground Four that petitioner's constitutional rights were not violated by Juror Three's viewing of the newspaper headline or the trial court's failure to excuse her. Therefore, the Appellate Division reasonably applied *Strickland* when it found that trial counsel did not err by failing to request a dismissal on this ground.

### 2. *Juror Five*

Petitioner did not exhaust his ineffective assistance of counsel claim as it relates to Juror Five, so I will conduct a *de novo* review. "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting

---

"[A]bsent an affirmative indication to the contrary," state courts are presumed to know and follow the law. *Bell v. Cone*, 543 U.S. 447, 456 (2005) (per curiam) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Federal habeas courts should not "needlessly create internal inconsistency" in state court opinions. *See Holland v. Jackson*, 542 U.S. 649, 654–55 (2004) (holding court of appeals erred by finding state court decision was contrary to *Strickland* when state court previously cited standard correctly and the opinion as a whole indicated correct standard was used); *see also Visciotti*, 537 U.S. at 23–24 (State courts' "occasional shorthand reference to [*Strickland*] standard ... may perhaps be imprecise, but if so it can no more be considered a repudiation of the standard than can this Court's own occasional indulgence in the same imprecision."); *Sawyer v. Superintendent Muncy SCI*, 619 Fed. App'x 163, 170 (3d Cir. 2015) ("Most relevant court of appeals decisions agree that where a reading of the state court's opinion as a whole demonstrates that the state court applied the correct legal standard (notwithstanding stray imprecise articulations), the federal habeas court is to defer to the state court's decision."), *cert. denied sub nom. Sawyer v. Smith*, 577 U.S. 1140 (2016).

*Strickland*, 466 U.S. at 689). I must be "highly deferential" to trial counsel's decisions and should not "second-guess counsel's assistance after conviction." *Strickland*, 466 U.S. at 689; *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996).

I have already determined that petitioner's constitutional rights were not violated by the tenuous "connection" between the trial court and Juror Five in my review of Ground Eight. Therefore, trial counsel did not err by not moving for a mistrial because counsel cannot be ineffective for declining to raise a meritless issue. *See Premo v. Moore*, 562 U.S. 115, 124 (2011).

I therefore conclude that petitioner has not satisfied his burden in showing that trial counsel's decisions amounted to incompetence under prevailing professional norms. I need not consider *Strickland*'s prejudice prong "[b]ecause failure to satisfy either prong defeats an ineffective assistance claim … ." *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002). Petitioner is not entitled to habeas relief on Ground Ten.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because petitioner's habeas claims are all without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. I will deny petitioner a certificate of appealability.

31

32

## V.  CONCLUSION

For the reasons stated above, I will deny the Second Amended Petition in part and dismiss it in part.   An appropriate Order accompanies this Opinion.


        */s/ Edward S. Kiel*

**EDWARD S. KIEL**
UNITED STATES DISTRICT JUDGE

Dated: July 22, 2026